## Conway v. Reed.

(Decided December 16, 1921.)

### Appeal from Nicholas Circuit Court.

1. Homestead—Abandonment—Evidence.—It is impossible to lay down an absolute rule as to the amount or character of evidence that is sufficient to show that a homestead in unoccupied property has not been abandoned, as the question turns on the ever-existing intention and purpose of the claimant as manifested by the evidence in the particular case under consideration.

2. Homestead—Abandonment—Intention.—Temporary absence from the property claimed as a homestead will not operate as an aban-

donment of the right if the claimant entertains an ever-present intention and purpose of returning to the property and making it his permanent home.

3.  Homestead—Abandonment.—On the evidence in this case it is held that appellant had not abandoned his homestead in the property in controversy.

U. M. SWINFORD and HOLMES & ROSS for appellant.

MORGAN & DARRAGH and W. E. HENDERSON for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

The appellee, Mary L. Reed, filed this suit in the Nicholas circuit court on October 26, 1917, on a judgment procured against the appellant, William Conway, in the Marion circuit court of Indiana, for $1,500.00 damages, and caused a specific attachment to be issued against and levied on a house and lot of appellant at Henryville, Ky., a suburb of Carlisle. Appellant filed answer, alleging that the house and lot on which the attachment was levied was of the value of less than $1,000.00, and claiming an exemptible homestead in the property. He also alleged that the property was acquired long prior to the date of the judgment sued on.

Appellee caused process to be issued against the Nicholas County Building and Savings Association, as the holder and owner of a mortgage on the property, and that company filed its answer and cross petition in the action setting up its mortgage debt. As there is no controversy as to the rights of that company, this appeal does not involve its claim.

The pleadings and the evidence show that appellant acquired a homestead in the property in controversy many years before the date of the judgment sued on, and that appellant's interest in the property is worth less than the exemption claimed. The only question for decision on this appeal is, that of whether or not appellant at the time of the filing of this suit had abandoned or lost his homestead in the property. On that question the court below decided against appellant and this appeal is prosecuted to reverse that judgment.

It appears from the record that appellant married prior to 1897 and in that year purchased the house and lot in controversy. After the purchase of it he and his wife occupied it as their home, and later, the date not appearing in the record, he was divorced from his wife, but he continued to occupy the house until 1914, when he

went to Lebanon, Ind., to work. He testified that he was induced to go to Indiana because he could obtain better wages there than he could command at Carlisle, and as he owed some money on the property he wanted to earn enough to be able to pay the debt against it; also that in renting the property at that time he reserved two rooms in the house, where he stored his household furniture. He returned to Carlisle in 1915 and remained some time, but in the fall of that year he went to Indianapolis, but he again returned to Carlisle in December, 1916, and remained there until June, 1917. On August 22, 1917, he married in Indianapolis, and, according to his testimony, shipped to Carlisle for storage in the rooms that he had reserved some of the household furniture of his second wife. From the time of his marriage until this suit was filed he remained in Indianapolis, but always having the intention, as he says, of returning to Carlisle, which he claimed as his home.

The judgment on which this action is based was rendered in the Marion circuit court of Indiana in October, 1917, and immediately thereafter this suit was filed. Appellant testified that his absences from Carlisle during the times referred to were temporary and that he always entertained an actual, fixed and ever-present intention of returning to his property in Kentucky. He was corroborated by one of his tenants to the extent that the testimony of that witness shows that one of the rooms was reserved and used by appellant for the storage of furniture, and by detailed conversations with appellant, in which appellant stated on several occasions that the property was his home and it was his intention to return there to live.

On the other hand the testimony for appellee shows that appellant, several times while in Indianapolis, expressed the intention of making Indianapolis his permanent home, and at one time stated that he had been in Indianapolis for a sufficient length of time to vote and inquired what he should do in order to vote. However, it it is not said that he voted in Indianapolis, and in fact it appears that he had never voted except at Carlisle, where he retained his church membership. Nor is it shown that he ever stated that he had abandoned his home in Kentucky and was living in Indianapolis as a permanent place of residence, but the testimony on this point was that he intended to move to Indianapolis and make that place his home. The expression of an intention to move

to Indianapolis and make his permanent home there, while evidence of the non-existence of a fixed and ever-present intention on his part to return to the property at Carlisle and make it his permanent home, is in fact only an avowal of a purpose to be carried out at some future time and is not of itself controlling evidence of an act of abandonment.    The expressed intention to locate permanently in Indianapolis is practically all the evidence introduced on behalf of appellee in support of her contention of an abandonment of the homestead at Carlisle, and it should be noted here that these expressions charged to appellant are shown by no one except appellee and members of her immediate family.

It is impossible to lay down an absolute rule as to the amount or character of evidence that is sufficient to prove that a homestead in unoccupied property has not been abandoned, as every case must be decided on the evidence adduced in that particular case and on the intention and purpose of the claimant of the right, as manifested by the facts in evidence.    Stronger evidence is required to establish the right in a case where it would be a deception or fraud upon a creditor, who had extended credit on the faith or ownership of property in which the debtor did not reside.    But that case is not presented here, as this is an effort to subject the homestead to a judgment for damages for breach of promise.

In Louisville Tobacco Warehouse Company v. Calvert, et al., 180 Ky. 718, the appellee, after having established a homestead in Owen county, left it and moved to Carrollton in 1900, where he resided and was employed for several years.    During that time he rented out his home in Owen county and lived in rented property in Carrollton.    It was proved that he had voted a few times while living in Carrollton, and it was not shown that he had ever voted in Owen county within the five years next preceding the sale of his property.    It also appeared that his children had attended the Carrollton public school during his residence there, without paying tuition. This court, however, in that case held that appellee had not abandoned or lost his homestead right in the property in Owen county.

As has been stated, no absolute rule can be laid down, but in every case of this kind the decision must turn on the facts of the particular case under consideration, with the principle in mind that the debtor must have an actual, fixed and ever-present intention to return to the home-

stead claimed, at the end of his temporary absence therefrom. (Mattingly, &c. v. Berry, 94 Ky. 544; Carter, Fisher & Co. v. Goodman, &c., 11 Bush 228; Burch v. Atchison, &c., 82 Ky. 585.)

Considering the evidence in this case in the light of the law as stated, it is our opinion that there was not an abandonment by appellant of his homestead in the property in controversy. His testimony as to his reasons for leaving his home and as to his ever-present intention of returning, which is corroborated in a measure by the fact that he reserved space in the house for the storing of his furniture and also by the testimony of one of his tenants, was not overcome by the evidence of appellee and the members of her immediate family, indicating on his part an intention at an uncertain time of making Indianapolis his permanent home. In this view of the effect of the testimony as a whole, we conclude that the lower court erred in sustaining the attachment and subjecting the property in question to the payment of the judgment on behalf of appellee.

Wherefore, the judgment is reversed and the cause remanded for proceedings consistent with this opinion.